UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHARLES A. WALKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 1:13-cv-1476-JMS-TAB |
| | ) | |
| MARK A. SEVIER, | ) | |
| | ) | |
| Respondent. | ) | |

**Entry Discussing Petition for a Writ of Habeas Corpus**

Petitioner Charles Walker was convicted in an Indiana state court of robbery and being a habitual offender. He is currently serving a forty-year sentence for these crimes. Mr. Walker now seeks a writ of habeas corpus, arguing that he was denied effective assistance of appellate counsel during his direct appeal.

For the reasons explained in this Entry, Mr. Walker's petition for a writ of habeas corpus is **denied** and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

**I.
Background**

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). Mr. Walker does not challenge any of the facts set forth in the Indiana Court of Appeals' decisions. The Court therefore adopts the factual summary set out in each of the Indiana Court of Appeals' decisions. On direct appeal, the Indiana Court of Appeals summarized the facts as follows:

> On November 29, 2005, Russell Folino received a telephone call from the Franklin
> Bar and Grill (the bar) in LaPorte County indicating that he had won a raffle prize

1

of $730. Folino was a regular at the bar. His girlfriend drove him there around 6:00 that evening, and he collected his winnings in open view. There were roughly thirty or forty people in the bar that Tuesday evening. Folino placed all but about $100 of the money in his wallet, which he kept in his back pocket. With the remaining money, Folio began buying drinks for himself and his friends. Folino, who was very joyous about his winnings, was warned by the bartender and a friend to be more careful with the money.

Walker arrived at the bar alone around 7:00. While inside the bar, he wore a large winter jack with a fur-rimmed hood. Walker roamed the bar but at times was in close proximity to Folino. Timothy Malott, a friend of Folino's, became nervous when Walker moved in close and "seemed to be eyeballing [Folino's] wallet." Malott nudged Folino and warned, 'Hey, man, be cool with that wallet open. We don't know all these people.' Folino agreed and put his wallet back in his pocket.

Around 7:30, Folino went into the empty men's restroom, followed soon by Walker. As Folino was at the urinal, a man entered and struck him in the head multiple times from behind. The heavy blows caused Folino to collapse to one knee. Folino pushed the man against the sink, and then the man fell on top of Folino. As the two struggled on the ground, the man reached "straight for [Folino's] back pocket" and took his wallet. The man then kicked Folino and ran out of the bathroom door. Folino could not identify the attacker. Folino, however, indicated that the man wore a big parka with "fur edging" around the hood, which was pulled down over his face.

Others in the bar head the commotion coming from inside the bathroom. Soon thereafter, Walker ran out of the bathroom and out of the bar, knocking down chairs along his way. He was wearing his coat with the hood up. Malott testified that he could "definitely" tell it was Walker who ran by him and out of the bar. Folino exited the bathroom disoriented and badly beaten. He exclaimed, 'That guy just stole my wallet.'

About two weeks later, Walker was arrested and he voluntarily gave a statement to a detective. Walker admitted being at the bar on the night in question. Walker stated that he was using the bathroom when an intoxicated Folino walked in and proceeded to accidentally urinate on Walker's shoe. Walker alleged that Folino then directed a racial slur at him. As a result, Walker admittedly struck Folino at least twice in the face, causing Folino to fall to the ground. Walker, however, denied robbing Folino and explained that when the incident was over he (Walker) simply walked out of the bathroom and exited the bar.

Following a jury trial, Walker was convicted of robbing Folino. He was also adjudicated a habitual offender. The trial court subsequently imposed a sentence of twenty years in prison for the robbery conviction, enhanced by twenty years for being a habitual offender.

*Walker v. State*, 872 N.E.2d 704, 2007 WL 2405067 (Ind. Ct. App. 2007) ("*Walker I*").

On direct appeal, Mr. Walker challenged the sufficiency of the evidence supporting his robbery conviction and whether a forty-year sentence was appropriate. *See Walker I*, 2007 WL 2405067, at *1. The Indiana Court of Appeals affirmed Mr. Walker's conviction and sentence. *See id.*

Following his direct appeal, Mr. Walker pursued state post-conviction relief, raising claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. As relevant here, Mr. Walker argued before the Indiana Court of Appeals that both his trial and appellate counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence supporting his habitual offender conviction, the trial counsel by failing to move for a directed verdict and the appellate counsel by failing to challenge the sufficiency of the evidence. *See Walker v. State*, 988 N.E.2d 1181, 1184 (Ind. Ct. App. 2013) ("*Walker II*"). The Indiana Court of Appeals affirmed the post-conviction court's denial of all of Mr. Walker's ineffective assistance of counsel claims. *See id.* at 1192.

Mr. Walker filed a petition to transfer with Indiana Supreme Court on June 21, 2013. The Indiana Supreme Court denied transfer on August 22, 2013.

Mr. Walker timely filed the instant petition for a writ of habeas corpus with this Court. He raises one issue: whether in *Walker II* the Indiana Court of Appeals unreasonably applied *Strickland v. Washington* in deciding that his appellate counsel in *Walker I* had not rendered ineffective assistance by failing to challenge the sufficiency of the evidence supporting his habitual offender conviction.

## II.
## Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). The petitioner filed his 28 U.S.C. § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). His petition, therefore, is subject to AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

"Under the current regime governing federal habeas corpus for state prison inmates, the inmate must show, so far as bears on this case, that the state court which convicted him unreasonably applied a federal doctrine declared by the United States Supreme Court." *Redmond v. Kingston,* 240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362 (2000); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000)). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

## III.
## Discussion

The methodology for the Court's analysis is this: The first step under § 2254(d)(1) is "to identify the 'clearly established Federal law, as determined by the Supreme Court of the United

States' that governs the habeas petitioner's claims." *Marshall v. Rodgers,* 133 S. Ct. 1446, 1449 (2013) (citing *Williams v. Taylor*, 529 U.S. at 412; *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). In proceeding with the analysis, a federal habeas court "must determine what arguments or theories supported, or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). If a state court's decision "was reasonable, it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011) (per curiam).

The clearly established federal law at issue in this case as set forth by the Supreme Court is as follows: a defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984). For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced the petitioner. *Id.* With respect to the performance requirement, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).

When the deferential AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is . . . difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*] at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ___, 129 S. Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with

5

unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105.

A.   **Performance**

Mr. Walker argues that his appellate counsel rendered deficient performance by failing to challenge the sufficiency of the evidence supporting his habitual offender enhancement. [Filing No. 10 at 13.] The Indiana Court of Appeals in *Walker II* addressed appellate counsel's performance on the merits:

> On direct appeal, appellate counsel raised two issues: the sufficiency of evidence supporting Walker's robbery conviction and the appropriateness of his forty-year sentence. Appellate counsel did not testify at the post-conviction hearing because he was deceased. Thus, it is difficult to determine why appellate counsel may have raised those issues instead of issues concerning Walker's habitual offender designation. Consequently, we look for guidance in the post-conviction exhibits pertaining to Walker's direct appeal.
>
> Petitioner's Exhibits 2 and 3 (the memorandum decision in Walker's direct appeal and his appellant's brief on appeal) indicate that appellate counsel did request that this Court vacate the habitual offender finding. He did so in conjunction with his appropriateness of sentence claim, specifically challenging the trial court's statement in the sentencing order that Walker's robbery and habitual offender "sentences will run consecutively." Petitioner's Ex. 3 at 11, 13. This Court addressed Walker's argument and found that notwithstanding the trial court's incorrect terminology, this "technical error" did not warrant vacating the habitual offender adjudication. *Walker*, slip op. at 6 n. 4.
>
> Moreover, the record in Walker's direct appeal contains a bond reduction investigation report and a presentence investigation report. Appellant's App. at 34, 38. Both documents list Walker's numerous convictions spanning his entire adult life, including not only the predicate offenses that served as the basis of his habitual offender finding, but also other felony and misdemeanor offenses. Because appellate counsel chose to raise appropriateness of Walker's sentence as an issue, he had to become familiar with Walker's criminal history. What appellate counsel saw was an extensive record with more felony convictions than necessary to support a habitual offender finding. Thus, even though State's Exhibit 29 did not mention a commission date for the 1989 burglary, this omission was not significant and obvious from the face of the record. Rather, the only thing glaring from the

> record is that Walker had committed crime after crime after crime during his adult life.
>
> With respect to the other raised issue, sufficiency of evidence supporting the robbery conviction, appellate counsel relied on the fact that Walker's victim could not positively identify him as his attacker. In short, the unraised issue of sufficiency of evidence supporting the habitual offender finding was not clearly stronger than the issues raised by appellate counsel. Based on the foregoing, we conclude that Walker failed to demonstrate that his appellate counsel performed deficiently in this respect.

*Walker II*, 988 N.E.2d at 1191-92. Because the Indiana Court of Appeals addressed appellate counsel's performance on the merits, its decision is subject to review pursuant to AEDPA.

Mr. Walker argues that the Indiana Court of Appeals in *Walker II* unreasonably applied the performance element of *Strickland* when it concluded that the sufficiency of the evidence supporting the habitual offender enhancement was not an obvious issue. [Filing No. 10 at 13.] The implication of Indiana Court of Appeals' holding, says Mr. Walker, is that a lawyer does not have to recognize meritorious arguments if his or her client has an extensive criminal record. [Filing No. 10 at 13.] The Respondent does not directly respond to this argument.

"Appellate lawyers are not required to present every nonfrivolous claim on behalf of their clients—such a requirement would serve to bury strong arguments in weak ones—but they are expected to 'select[] the most promising issues for review.'" *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013) (quoting *Jones v. Barnes*, 463 U.S. 745, 752-53 (1983)). "For this reason, if [the petitioner's appellate counsel] abandoned a nonfrivolous claim that was both 'obvious' and 'clearly stronger' than the claim that he actually presented, his performance was deficient, unless his choice had a strategic justification." *Id.* Appellate counsel's performance is assessed "from the perspective of a reasonable attorney at the time of [the] appeal, taking care to avoid the distorting effects of hindsight." *Id.* (citation and quotation marks omitted); *see also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The Indiana Court of Appeals in *Walker II* recognized and

7

applied these standards in concluding that Mr. Walker's appellate counsel did not provide deficient performance. *See Walker II*, 988 N.E.2d at 1191-92.

The Court addresses first Mr. Walker's contention that the Indiana Court of Appeals unreasonably concluded that the unraised challenge to the sufficiency of the evidence supporting the habitual offender enhancement was not obvious. As detailed above, the Indiana Court of Appeals concluded that the unraised issue was not obvious because, to recognize the issue, appellate counsel[1] would have had to notice that the commission date for Mr. Walker's 1989 burglary was absent amidst Mr. Walker's extensive criminal history that included "more felony convictions than necessary to support a habitual offender finding." *Walker II*, 988 N.E.2d at 1191.

Deciding whether an issue is "obvious" is a task that allows significant room for reasonable disagreement, which makes Mr. Walker's task of establishing that the Indiana Court of Appeals' assessment was unreasonable a difficult one. *See Harrington*, 562 U.S. at 101 ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.") (alteration in original); *see also id.* ("A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."). Although this Court may not have reached the same conclusion as the Indiana Court of Appeals had it decided whether this issue was obvious in the first instance, the Court cannot say, given the significant leeway AEDPA requires this Court to give the Indiana Court of Appeals, that its resolution of the issue was unreasonable. The Indiana Court of Appeals reasoned that the

---

[1] Mr. Walker's counsel on direct appeal was deceased by the time Mr. Walker' post-conviction hearing was held, thus the Indiana Court of Appeals did not have the benefit of his testimony in evaluating his performance or in determining his strategy. *See Walker II*, 988 N.E.2d at 1191.

8

appellate record revealed that Mr. Walker had such an extensive criminal history, including several felonies that would support his habitual offender enhancement, that challenging the lack of a commission date on one of the predicate felonies was not an obvious issue to raise on appeal. *See Walker II*, 988 N.E.2d at 1191. This is not unreasonable, as Mr. Walker's extensive criminal record may very well have obscured the fact that one date—the commission date for his 1989 burglary—was absent from the trial record, and consequently, may have obscured this issue an obvious one to raise.[2] Given this, the Court must conclude that the Indiana Court of Appeals' decision was reasonable; and if it "was reasonable, it cannot be disturbed." *Hardy*, 132 S. Ct. at 495.

Alternatively, even if the Indiana Court of Appeals acted unreasonably when concluding that the unraised issue was not obvious, Mr. Walker failed to challenge the other ground on which the Indiana Court of Appeals relied to conclude that appellate counsel's performance was not deficient—namely, that the unraised issue was not clearly stronger than the arguments appellate counsel raised.[3] *Walker II*, 988 N.E.2d at 1191-92. The Indiana Court of Appeals concluded that

---

[2] The Court notes that trial counsel did not raise this issue, which precludes the issue from being obvious to appellate counsel on that basis. *See Shaw*, 721 F.3d at 916 ("Trial counsel's preservation of a claim can make it obvious.").

[3] Mr. Walker argues that the basis for the Indiana Court of Appeals' decision in *Walker II* was not based on weighing the relative strength of the unraised argument against the arguments that were raised; instead, says Mr. Walker, it was based solely on the conclusion that the unraised issue was not "obvious." [Filing No. 28 at 3 n.1.] Mr. Walker maintains that the strength of the arguments was "unmentioned by the [Indiana] Court of Appeals," and that this basis for decision was "invent[ed]" by the Respondent. [Filing No. 28 at 3 n.1.] This is simply incorrect. In *Walker II*, the Indiana Court of Appeals concluded both that the unraised issue was not "obvious" and that "the unraised issue of sufficiency of evidence supporting the habitual offender finding was not clearly stronger than the issues raised by appellate counsel." 988 N.E.2d at 1191-92. Moreover, the Indiana Court of Appeals clearly outlined that the relative strength of the raised and unraised arguments was part of the legal analysis necessary to evaluate appellate counsel's performance. *See id.* at 1191. Therefore, Mr. Walker is incorrect that this was not part of the reasoning

the unraised challenge to the sufficiency of the evidence supporting the habitual offender enhancement was not "clearly stronger" than the arguments appellate counsel raised. *Walker II*, 988 N.E.2d at 1191-92. Mr. Walker "bears the burden of proving that [the Indiana Court of Appeals'] application of federal law was unreasonable," *Daniels v. Knight*, 476 F.3d 426, 433 (7th Cir. 2007), but he has not attempted to carry this burden with respect to the Indiana Court of Appeals' conclusion that the unraised argument was not clearly stronger. Accordingly, for this additional reason, the Court concludes that the Indiana Court of Appeals' decision regarding appellate counsel's performance cannot be disturbed.

To be clear, in the Court's view, counsel should check to ensure that there is sufficient evidence admitted at trial to establish that the predicate offenses supporting a habitual offender enhancement meet the sequencing requirements of Ind. Code § 35-50-2-8(f). But the failure to do so, by itself, is not sufficient to establish that *appellate* counsel rendered deficient performance by failing to pursue this argument. "[B]ecause appellate counsel is not required to raise every non-frivolous issue on appeal, appellate counsel's performance is deficient under *Strickland* only if []he fails to argue an issue that is both obvious and clearly stronger than the issues actually raised."[4]

---

supporting the Indiana Court of Appeals' conclusion that appellate counsel's performance was not deficient.

[4] In his reply brief, Mr. Walker points out that there is an "asymmetry" between the Indiana Court of Appeals' conclusions that Mr. Walker's trial counsel rendered deficient performance by not seeking a directed verdict as to the sufficiency of the evidence supporting his habitual offender enhancement, while concluding that appellate counsel was not similarly ineffective for not raising the issue. [Filing No. 28 at 1.] The Court need not delve into Mr. Walker's ineffective assistance of trial counsel claim because it was not raised in his federal habeas proceeding. However, the Court notes that this "asymmetry" could be explained, at least in part, by the fact that ineffective assistance of appellate counsel claims have a "special gloss" in that to prevail on such a claim, one must make the showing—not required for an ineffective assistance of trial counsel claim—that the unraised issue was "obvious" and "clearly stronger" than the issues raised. *Makiel*, --- F.3d ----, 2015 WL 1607328, at *12-13. It was on these additional grounds that the Indiana Court of Appeals

*Makiel v. Butler*, --- F.3d ----, 2015 WL 1607328, *13 (7th Cir. 2015). For the reasons stated above, Mr. Walker has failed to undermine the Indiana Court of Appeals' conclusion with respect to these additional showings that are necessary to prove an ineffective assistance of appellate counsel claim.

    **B.    Prejudice**

In the alternative, the Court will address whether counsel's allegedly deficient performance prejudiced Mr. Walker. The Indiana Court of Appeals in *Walker II* did not address prejudice. *See Walker II*, 988 N.E.2d at 1191-92. The Court must therefore review the prejudice prong *de novo*. *See Porter v. McCollum*, 558 U.S. 30, 38 (2009); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005).

Mr. Walker maintains that the prejudice analysis is straightforward: had his appellate counsel challenged the sufficiency of the evidence supporting his habitual offender enhancement, "the Indiana Court of Appeals would have reversed the finding that [Mr.] Walker was an habitual offender." [Filing No. 10 at 14 (citing *Steelman v. State*, 486 N.E.2d 523, 525 (Ind. 1985)).] The respondent contends that, even if Mr. Walker's counsel raised the issue Mr. Walker identifies, his habitual offender enhancement would not have been permanently vacated; instead, he would only have been entitled to a new habitual offender hearing in which the State would have had another opportunity to produce evidence that Mr. Walker qualifies as a habitual offender. [Filing No. 15 at 8-14 (citing *Jaramillo v. State*, 823 N.E.2d 1187 (Ind. 2005)).] Mr. Walker replies that to establish prejudice, he need only show a reasonable probability that the result of his direct appeal would have been different, not that the ultimate outcome would have changed. [Filing No. 28 at 7-8.]

---

concluded that Mr. Walker's appellate counsel did not render deficient performance, which explains, at least in part, the purported "asymmetry" identified by Mr. Walker.

Given the parties' disagreement about what showing is necessary to establish prejudice for an ineffective assistance of appellate counsel claim, the Court begins with that issue. There are several formulations for the legal test to determine whether a petitioner was prejudiced by his appellate counsel's deficient performance. For example, prejudice has been said to exist: (1) "if the issue not raised may have resulted in a reversal of the conviction or an order for a new trial," *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003) (citation and quotation marks omitted); or (2) "if counsel bypassed an nonfrivolous argument that, if successful, would have resulted in the vacation of [the petitioner's] conviction," *Shaw*, 721 F.3d at 918; or (3) if the "defendant . . . show[s] that effective assistance would have given him a reasonable shot at acquittal," *Gibbs v. VanNatta*, 329 F.3d 582, 584 (7th Cir. 2003). Although these formulations are similar, in cases such as this one, the difference between having to show that the petitioner's conviction would have been reversed or vacated on appeal or that the petitioner has a reasonable shot at ultimately being acquitted is critical.

The Court concludes that the appropriate standard in this case is whether the petitioner can show that he has "a reasonable shot at acquittal." *Gibbs*, 329 F.3d at 584. This is primarily because this is the analysis conducted by the Seventh Circuit in *Gibbs*, which in many ways is analogous to the instant case. In *Gibbs*, the petitioner argued that his appellate counsel provided ineffective assistance by failing to argue that evidence of numerous burglaries prejudiced his defense of his habitual offender enhancement. *Id.* at 583-84. The Seventh Circuit concluded that the petitioner's counsel rendered deficient performance, but the petitioner could not establish prejudice. *Id.* at 585. Prejudice could not be establish, said the Seventh Circuit, not because his habitual offender enhancement would not have been vacated and remanded for a new hearing, but because the petitioner failed to show that there was a "sufficient likelihood that with competent representation

12

he would have *beaten the habitual-offender rap to warrant further proceedings*." *Id.* (emphasis added). There was no such likelihood because "[t]he habitual-offender statute states that if you have two prior unrelated felonies, you're a habitual offender," and it was undisputed that the petitioner had such felonies. *Id.* In short, *Gibbs* demonstrates that the prejudice determination for an ineffective assistance of appellate counsel claim examines more than the result of the direct appeal; the Court must also examine whether there is a reasonable probability of ultimate relief had appellate counsel's performance not been deficient. Other Seventh Circuit authority confirms that this is the appropriate analysis. *See, e.g.*, *Stallings v. United States*, 536 F.3d 624, 628 (7th Cir. 2008) (stating that had the district court made clear that the petitioner's sentence would have been the same despite appellate counsel's failure to raise an issue that would have resulted in a remand, the petitioner would not have been able to establish prejudice for his ineffective assistance of appellate counsel claim).

Following the guidance from *Gibbs*, Mr. Walker cannot establish that he was prejudiced by his appellate counsel's failure to challenge the sufficiency of the evidence supporting his habitual offender enhancement. Or, as stated by the Seventh Circuit, Mr. Walker has not "shown sufficient likelihood that with competent representation he would have beaten the habitual-offender rap to warrant further proceedings."[5] *Gibbs*, 329 F.3d at 585. First, in the direct appeal record is Mr. Walker's Pre-Sentence Investigation Report, which establishes that the commission date for his 1989 burglary was long after he was sentenced for his 1980 robbery. *See* Direct Appeal Appx. at 35-36. This was the only date that Mr. Walker alleged was not in the evidence that was

---

[5] Under Indiana law, if a defendant has a habitual offender enhancement overturned on appeal due to insufficiency of the evidence, the enhancement is not permanently vacated; at a new habitual-offender proceeding, the State can present new evidence supporting the enhancement without running afoul of the Double Jeopardy Clause. *See Dexter v. State*, 959 N.E.2d 235, 240 (Ind. 2012); *Jaramillo*, 823 N.E.2d at 1191.

13

necessary to prove that he qualified as a habitual offender.[6] [*See* Filing No. 15-7 at 25.] Accordingly, Mr. Walker's chance of overcoming the habitual offender enhancement at a new hearing is, at best, minimal.

Second, Mr. Walker does not even contend that he does not qualify for the habitual offender enhancement. In fact, Mr. Walker essentially admitted to the Indiana Court of Appeals that the sequencing necessary to establish that his 1980 robbery and 1989 burglary convictions qualify him for the habitual offender enhancement are met by clarifying that "he committed the 1980 robbery on February 4, not February 8, and that he committed the 1989 burglary on March 10, not March 24." *Walker II*, 988 N.E.2d at 1188 n.3 (citing Filing No. 15-7 at 11). For this reason as well, Mr. Walker cannot establish that he would have been able to overcome the habitual offender enhancement even if his appellate counsel had challenged the sufficiency of the evidence supporting it.

In sum, Mr. Walker has failed to carry his burden of establishing that effective assistance of appellate counsel would have "given him a reasonable shot at acquittal" on his habitual offender enhancement. *Gibbs*, 329 F.3d at 584. The evidence establishes that he qualifies as a habitual offender, and Mr. Walker himself fails to even assert otherwise. For these reasons, Mr. Walker cannot establish that he was prejudiced by his appellate counsel's allegedly deficient performance.

## IV.
## Conclusion

This court has carefully reviewed the state record in light of Mr. Walker's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus

---

[6] Mr. Walker also argued that the 1994 cocaine charge was ineligible, [Filing No. 15-7 at 24-25], but the State did not challenge the post-conviction court's determination that it was ineligible, *see Walker II*, 988 N.E.2d at 1186.

proceeding permits. Because Mr. Walker failed to carry his burden on the performance and prejudice elements of his ineffective assistance of appellate counsel claim, he is not entitled to habeas relief, and his petition is therefore **denied.**

Judgment consistent with this Entry shall now issue.

## V.
## Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254* proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Walker has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 04/30/2015

*[Signature]*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Electronically to all counsel of record